IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KENT A.,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case #4:22-cv-00041-PK<br><br>Magistrate Judge Paul Kohler |

  This matter comes before the Court on Plaintiff Kent A.'s appeal from the decision of the Social Security Administration denying his application for disability insurance benefits. The Court will affirm the administrative ruling.

## I.  STANDARD OF REVIEW

  This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[3] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

affirmed.[4] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II. BACKGROUND

A.     PROCEDURAL HISTORY

On April 9, 2014, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on August 14, 2013.[7] Plaintiff sought benefits based on Type II diabetes, gout, arthritis in the right knee, and coronary artery disease.[8] The claim was denied initially.[9] Plaintiff then requested a hearing before an ALJ, but later withdrew his request for hearing.[10] On May 24, 2016, the ALJ dismissed Plaintiff's case.[11] The Appeals Council vacated the dismissal on November 1, 2016, finding that Mr. Armstrong was not advised of the effects of a withdrawal, and ordered that he receive a full hearing.[12] A hearing before the ALJ was held on

---

[4] *Richardson*, 402 U.S. at 390.

[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[7] R. at 111–12.

[8] *Id.* at 131.

[9] *Id.* at 56–58 (At this time, Colorado was a test state for which the reconsideration appeal step was eliminated).

[10] *Id.* at 65–66, 78.

[11] *Id.* at 47.

[12] *Id.* at 50.

June 14, 2017.[13] On November 2, 2017, the ALJ found that Plaintiff was not disabled.[14] The Appeals Council denied review on July 21, 2018.[15]

Plaintiff sought review by this Court on September 21, 2018.[16] The Commissioner filed an unopposed motion to remand, which the Court granted.[17]

A remand hearing was held on July 19, 2019.[18] The ALJ issued an unfavorable decision on September 13, 2019.[19] Plaintiff appealed the decision to the Appeals Council, which remanded the decision to the ALJ for a second time.[20]

On September 15, 2021, there was a second remand hearing before the ALJ.[21] The ALJ again issued an unfavorable decision, finding Plaintiff not disabled.[22] The Appeals Council denied review on May 16, 2022,[23] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[24]

---

[13] *Id.* at 22–32.
[14] *Id.* at 6–19.
[15] *Id.* at 1–3.
[16] *Id.* at 399–405.
[17] *Id.* at 406–07.
[18] *Id.* at 374–93.
[19] *Id.* at 408–21.
[20] *Id.* at 422–28.
[21] *Id.* at 339–64.
[22] *Id.* at 322–38.
[23] *Id.* at 314–21.
[24] 20 C.F.R. § 416.1481.

On June 24, 2022, Plaintiff filed his complaint in this case.[25] On July 20, 2022, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[26] The Commissioner filed an answer and the administrative record on August 25, 2022.[27]

Plaintiff filed his Opening Brief on October 13, 2022.[28] The Commissioner's Answer Brief was filed on November 17, 2022.[29] Plaintiff filed his Reply Brief on November 30, 2022.[30] The Court heard argument on February 15, 2023.[31]

B.   MEDICAL EVIDENCE

The medical evidence in this case is sparse. Plaintiff has been diagnosed with diabetes, hyperlipidemia, arthritis, gout, and coronary artery disease.[32] In August 2013, Plaintiff weighed 335 pounds with a BMI of 43, putting him in the obese range.[33] Full labs were ordered, which showed elevated levels of uric acid (indicative of gout) and A1C (indicative of diabetes).[34] However, Plaintiff demonstrated normal gait and station.[35] Plaintiff was prescribed gabapentin

---

[25] Docket No. 6.
[26] Docket No. 13.
[27] Docket Nos. 15–16.
[28] Docket No. 19.
[29] Docket No. 21.
[30] Docket No. 22.
[31] Docket No. 24.
[32] R. at 218, 219, 271, 280.
[33] *Id.* at 272.
[34] *Id.* at 286–87.
[35] *Id.* at 272.

for nerve pain.[36] At a follow-up visit in September 2013, Plaintiff indicated that the gabapentin had helped.[37]

In October and November 2013, Plaintiff complained of leg swelling and right knee pain.[38] An examination revealed no deep vein thrombosis and an x-ray showed mild narrowing of the retropatellar joint space with a small superior patellar spur.[39]

Plaintiff was seen on November 18, 2013, for right knee pain.[40] Plaintiff was using a walker and was found to have a moderately antalgic gait, a limited range of motion, and was tender to palpitation. Plaintiff was diagnosed with mild degenerative arthritis in his right knee and gout. It was determined that Plaintiff was likely suffering from a gout flare-up. Plaintiff was given a cortisone injection and it was recommended that he continue to use a walker as needed and wean to crutches as his symptoms allowed. After his cortisone injection, Plaintiff reported improvement and was able to walk normally.[41] However, it was later noted that he was using a cane.[42]

Plaintiff has also complained of shortness of breath and chest pain.[43] Plaintiff was diagnosed with coronary artery disease.[44] However, Plaintiff's exam findings were largely

---

[36] *Id.* at 273.
[37] *Id.* at 271.
[38] *Id.* at 211–12, 259.
[39] *Id.* at 211–12, 276.
[40] *Id.* at 218–19.
[41] *Id.* at 264.
[42] *Id.* at 260.
[43] *Id.* at 213, 226.
[44] *Id.* at 252.

normal.[45] Plaintiff elected to pursue a conservative approach to the treatment of his coronary artery disease.[46]

C.     HEARING TESTIMONY

At the most recent hearing, medical expert Dr. Steven Golub provided testimony. While Dr. Golub stated that he had some difficulty reviewing the medical records due to how they were presented to him, he stated that this did not take away from his review.[47] Dr. Golub identified a number of medically determinable impairments supported by the medical records.[48] However, Dr. Golub opined that only Plaintiff's knee issue was established during the relevant period.[49] As to that impairment, Dr. Golub testified that it was not a severe impairment because x-rays showed only mild degenerative disease, which would not cause significant reduction in motion.[50]

D.     THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. The ALJ found that Plaintiff was last insured on December 31, 2014.[51] At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity between the alleged onset date of August 14, 2013, and the date last insured.[52] At step two, the ALJ found that Plaintiff suffered from the following medically determinable—although not severe—

---

[45] *Id.* at 227, 260, 264, 268, 284.
[46] *Id.* at 226.
[47] *Id.* at 344–45.
[48] *Id.* at 347–49.
[49] *Id.* at 349–50.
[50] *Id.* at 351.
[51] *Id*. at 328.
[52] *Id.*

impairments: obesity, gout, osteoarthritis of the right knee, hyperlipidemia, and diabetes.[53] Specifically, the ALJ found that Plaintiff's obesity, hyperlipidemia, and diabetes would cause no more than a "minimal effect" on Plaintiff's ability to perform basic work activities and were only "slight abnormalities."[54] As for Plaintiff's gout and right knee osteoarthritis, the ALJ found that such impairments had no more than a minimal effect on Plaintiff because Plaintiff's pain and need for an assistive device were limited to an approximately two-month period of time.[55] Based on these considerations, the ALJ determined that Plaintiff was not disabled at any time between August 14, 2013, the alleged onset date, and December 31, 2014, the date last insured.[56] Because the ALJ found that Plaintiff failed at step two, the ALJ did not engage in the rest of the sequential evaluation.[57]

### III. DISCUSSION

Plaintiff raises three issues in his brief: (1) whether the ALJ erred in finding that Plaintiff had no severe impairments; (2) whether the ALJ erred in his evaluation of Plaintiff's need for an assistive device; and (3) whether the ALJ erred in his evaluation of the medical opinion evidence, particularly from the medical expert who testified at the hearing.

A.   STEP TWO

At step two of the sequential evaluation, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. An impairment is "severe" if it

---

[53] *Id.*
[54] *Id.* at 330.
[55] *Id.* at 330–31.
[56] *Id.* at 329–32.
[57] *Id.* at 332.

"significantly limits [a claimant's] physical or mental ability to do basic work activities."[58] A claimant must make only a de minimis showing for his claim to advance beyond step two of the analysis.[59] However, "a showing of the mere presence of a condition is not sufficient."[60] Thus, "if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities . . . the impairments do not prevent the claimant from engaging in substantial gainful activity."[61] That is, "[i]f the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits."[62]

Here, the ALJ determined that Plaintiff had a number of medically determinable impairments, but that none of them were severe. Plaintiff argues that the ALJ failed to properly consider the limiting effects of the combination of his impairments. Plaintiff claims that his combined impairments limited his ability to ambulate effectively and that his cardiac issues caused lowered oxygen levels and shortness of breath.

The ALJ considered all of the evidence and concluded that Plaintiff's impairments would not result in work-related limitations for a continuous period of twelve months. As to his obesity, the ALJ concluded that there is no evidence that it would cause more than a minimal effect on his ability to perform basic work activities. While Plaintiff complains that the ALJ did not

---

[58] 20 C.F.R. §§ 404.1520(c), 416.920(c).

[59] *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).

[60] *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008).

[61] *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[62] *Id.*

perform a more in-depth analysis, Plaintiff points to no evidence the ALJ failed to consider touching on how Plaintiff's obesity limited his ability to work.

As for Plaintiff's knee pain, the ALJ relied on imaging that showed only mild impairment. The ALJ further relied on the testimony of Dr. Golub, who opined that such imaging would not cause significant reduction in motion.[63] This testimony is consistent with examination findings, which demonstrated normal gait and station.[64]

Turning to Plaintiff's gout, the record shows that Plaintiff had increased levels of uric acid. He also suffered from gout flare-ups that made it difficult to ambulate, requiring him to use assistive devices at times. However, Plaintiff was able to obtain some relief from a cortisone injection, after which Plaintiff reported improvement and was able to walk normally.[65] However, it was later noted that he was using a cane, something the ALJ ignored.[66] During his testimony at the hearing before the ALJ, Plaintiff noted that during the relevant time period, he experienced gout flare-ups every other month that would last two or three days, but that he was able to adequately treat them.[67] From this evidence, the ALJ concluded that Plaintiff had a brief period of lower extremity pain during which he used a cane or a walker. However, the ALJ found that the record did not support that these impairments had more than a minimal effect on his ability to perform basic work activities for a continuous period of twelve months, making them non-

---

[63] R. at 351.
[64] Id. at 272.
[65] Id. at 264.
[66] Id. at 260.
[67] Id. at 383–84.

severe. This is consistent with the medical records from the relevant period and Dr. Golub's testimony at the hearing.

Finally, the ALJ noted that the evidence demonstrated elevated lipids and A1C. However, he found no evidence that Plaintiff's hyperlipidemia or diabetes would cause more than a minimal effect on his ability to perform basic work activities. Plaintiff points out that he was diagnosed with diabetic neuropathy and prescribed gabapentin for nerve pain. However, there is no evidence that Plaintiff's neuropathy resulted in work-related limitations for the durational requirement. Further, at the hearing before the ALJ, Dr. Golub noted that there was no objective evidence demonstrating that Plaintiff's neuropathy caused any significant limitations.[68]

The Court finds that the ALJ's assessment is supported by substantial evidence. The limited medical evidence shows that Plaintiff had been diagnosed with a number of medically determinable impairments. However, there is no evidence that these impairments, either singly or in combination, significantly limited Plaintiff's ability to do basic work activities for the requisite durational period. Plaintiff's arguments essentially ask the Court to reweigh the evidence, which it cannot do. Therefore, the Court finds that the ALJ applied the correct legal standard and his decision on this point is supported by substantial evidence.

B.  ASSISTIVE DEVICE

Plaintiff next argues that the ALJ erred in his evaluation of Plaintiff's need of an assistive device. There is evidence showing that Plaintiff used assistive devices, including a cane and a walker, during the relevant period. If the use of an assistive device is medically required, an ALJ

---

[68] *Id.* at 352–54.

must consider any limitations caused by the need for use of such a device.[69] "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."[70]

While there is evidence that Plaintiff used an assistive device, there is no evidence that such use was medically required. Mere use of an assistive device, or even a prescription for one, is not sufficient to show medical necessity.[71] Moreover, as is set forth above, the ALJ concluded that Plaintiff's need for an assistive device was limited to a brief period in 2013. This conclusion is supported by substantial evidence. Therefore, remand is not required on this point

C.   MEDICAL OPINION EVIDENCE

Plaintiff's final argument concerns the ALJ's treatment of the medical opinion evidence from Dr. Golub.[72] Since Plaintiff filed his case prior to March 27, 2017, the prior regulations regarding medical opinion evidence apply to this case. Under those regulations, an ALJ must review every medical opinion.[73] In reviewing the opinions of treating sources, the ALJ must engage in a sequential analysis.[74] First, the ALJ must consider whether the opinion is well-

---

[69] SSR 96-6p, 1996 WL 374185, at *7 (July 2, 1996).

[70] *Id.*

[71] *Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) (stating that "the legal issue does not turn on whether a cane was prescribed . . . but whether a cane was medically required") (internal quotation marks and citation omitted).

[72] Throughout the decision, the ALJ erroneously refers to Dr. Golub as Dr. Michael Hartsfield. *See* R. at 331.

[73] 20 C.F.R. § 404.1527(c).

[74] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

supported by medically acceptable clinical and laboratory techniques.[75] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent with other substantial evidence in the record.[76] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[77]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[78] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[79]

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[80] If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[81]

Plaintiff argues that the ALJ erred in his treatment of Dr. Steven Golub, who testified at the most recent evidentiary hearing. The ALJ gave Dr. Golub's opinion partial weight. The ALJ

---

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[80] *Id.*

[81] *Id.*

found that Dr. Golub's overall assessment that Plaintiff's impairments were not severe was consistent with the medical evidence.

Plaintiff's main complaint is that Dr. Golub testified as to a number of generalities and did not provide specific testimony as to Plaintiff's impairments. Plaintiff is correct that Dr. Golub did present some generalized testimony, such as stating that 75% of obese people at age 57 would have some mild degenerative disease and that "[t]here are lots of diabetic patients who walk around with a bit of tingling."[82] But a close reading of Dr. Golub's testimony reveals that his opinions were based on his review of Plaintiff's medical records. For example, Dr. Golub pointed to medical records that showed mild degenerative disease in Plaintiff's right knee, which he explained would not cause significant restriction of motion.[83] He also cited to a lack of records showing that Plaintiff had developed severe neuropathy as a result of his diabetes, making any limitations unsupported.[84] It was for these reasons that he concluded Plaintiff's impairments were non-severe, not his more generalized statements.

Plaintiff also takes issue with Dr. Golub's supposition that Plaintiff's use of assistive devices was the result of a temporary gout flareup. While Dr. Golub's testimony on this point is somewhat speculative, he also went on to testify that he did not see a prescription for an assistive device.[85] The lack of documentation showing the need for the use of an assistive device provides support that use of an assistive device was not medically necessary. Moreover, given the limited

---

[82] R. at 351–52.
[83] *Id.* at 351.
[84] *Id.* at 353.
[85] *Id.* at 356.

evidence concerning the use of an assistive device, the conclusion that such use was temporary in nature is reasonable. While Dr. Golub's testimony had some flaws, the ALJ's treatment of it does not warrant remand.

## IV. CONCLUSION

Having made a thorough review of the entire record, the Court will affirm the Commissioner's decision.

DATED this 24th day of February, 2023.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge